IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MASAD FOOD INDUSTRY, <br><br> Plaintiff, <br><br> v. <br><br> INTERNATIONAL GOLDEN FOODS, INC. an Illinois Corporation, <br><br> Defendant. | Case No. 21-cv-06075 <br><br> Judge Mary M. Rowland |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Masad Food Industry filed this action against Defendant International Golden Foods, Inc. alleging that Golden failed to provide full payment for goods delivered by Masad in breach of the parties' contracts. The case was heard in a bench trial in February 2025, after which the parties filed post-trial briefs and responses. For the reasons explained below, the Court rules in favor of Plaintiff and awards damages in the amount of $66,861 post-judgment interest pursuant to 28 U.S.C. § 1961(a).[1]

**BACKGROUND AND FINDINGS OF FACT**

**I.    The Parties' Dispute**

---

[1] This memorandum sets forth the Court's findings of fact and conclusions of law pursuant to Federal Rule 52(a). These findings are based on the documentary evidence, the trial testimony, and the Court's credibility determinations after observing witnesses testify. All findings are by a preponderance of the evidence unless otherwise noted. To the extent that any finding of fact may be considered a conclusion of law, it shall also be deemed a conclusion of law; similarly, to the extent that any conclusion of law may be considered a finding of fact, it shall also be deemed a finding of fact.

Plaintiff Masad Food Industry ("MFI") is a Jordanian company that makes and sells food products. Tr. at 10-11. The sole shareholder of MFI is Hisham Masad. Trial Tr. at 77. Defendant International Golden Foods ("IGF") is an Illinois corporation that sells food products to wholesalers and retailers. [20] ¶ 7; Trial Tr. at 143. Mansour Amiran is the president of IGF. Trial Tr. at 97.

The parties' dispute centers around payment for the below 11 invoices for food products that MFI shipped from Jordan to IGF in the United States. [97] at 3.

| Invoice | Amount |
| --- | --- |
| 2-Golden-2017 | $55,402 |
| 3-Golden-2017 | $4,555 |
| 6-Golden-2017 | $5,318 |
| 4-Golden-2017 | $6,996 |
| 5-Golden-2017 | $8,904 |
| 1-Golden-2018 | $70,096 |
| 2-Golden-2018 | $5,616 |
| 8-Golden-2018 | $12,390 |
| 9-Golden-2018 | $60,800 |
| 11-Golden-2018 | $14,705 |
| 14-Golden-2018 | $43,400 |

The parties agree that IGF paid MIF at least $182,571 for the receipt of food products. Pls. Ex. 6. MIF now seeks the balance of $105,661. The parties dispute (1) whether any contractual agreement existed between them such that IGF was ever obligated to pay for the products, (2) whether IGF nonetheless paid additional partial

2

sums in satisfaction of the amount owed, and (3) whether IGF was justified in paying partial amounts for the goods because of their quality or salability.

With respect to the first argument, Amiran testified that IGF never agreed to purchase any food from MFI. *See* Trial Tr. at 98. However, Amiran also testified, and the Court finds as a fact, that with respect to each of the disputed shipments, IGF arranged to receive the shipped product from United States Customs, arranged for its travel by freight to IGF's location in Bensenville, Illinois, stored the food product, distributed the product to IGF's salesmen, and sold the food product to customers. *See* Trial Tr. 24-25, 136-38. Further, Amiran or an agent of IGF's attested on a United States Customs form that "the merchandise was obtained pursuant to a purchase or agreement to purchase, that the prices set forth on the invoices are true." Trial Tr. at 178-79. Additionally, MFI introduced emails into evidence that show that IGF coordinated with MFI to receive the shipments. Pls. Ex. 19-21.

With respect to the second argument, IGF put forth evidence that it paid various amounts in satisfaction of the disputed invoices. The Court admitted into evidence portions of Defendant's Exhibit 4, which includes copies of wire confirmations purporting to reflect payments of $20,000 to Hisham Masad and $18,800 to another entity owned by Masad named Masad Trading LLC. GOLDEN00020, 23. The memo on each wire confirmation reflects that they are for "Invoice 092018," and IGF argued that both payments were made in satisfaction of the disputed 9-Golden-2018 invoice. *Id*. MFI objected to the admission of both documents because they were sent to an entity other than the Plaintiff, MFI, and

3

because the memo indicates both payments were made for an "Invoice 092018" that does not exactly match MFI's internal designation of the invoice. Tr. Transcript 124-25.

Separately, the Court admitted into evidence GOLDEN00008, which appears to be a copy of the front of a check made out to Hisham Masad for $15,402.50. Def's. Ex. 1. The check contains a reference to "002-GOLDEN-20." *Id*.

Additionally, Amiran transmitted at least some money to Masad for personal reasons. Trial Tr. 142-45. Amiran conceded that at least some of these payments were made to help Masad establish himself in the United States or were "sympathy payments" after Masad experienced personal hardship. Trial Tr. 124, 145, 170.

With respect to the third argument, Amiran testified that IGF paid only partial amounts because some of the goods that IGF received from MFI were not salable. *See* Trial Tr. 107. Amiran testified that he was in possession of documents establishing that the products were not salable, but those documents were never produced in discovery or introduced at trial. Trial Tr. 179-80.

For his part, Masad acknowledged that IGF paid him or Masad Trading LLC various amounts. Masad testified that some payments were made to help him after he had newly arrived in the United States. Trial Tr. 84.

Masad also testified that, separate from his exporting relationship with IGF, he worked as a travelling salesman on behalf of IGF. Trial Tr. 66-68. Masad testified that he created Masad Trading, LLC, to receive commission payments from IGF for that work. *Id*. He further testified the payments directed to Masad Trading, LLC from

4

IGF were made to compensate Masad for that work he did selling IGF's inventory rather than to pay him for any of the disputed invoices. *Id*. Amiran denied that any commission-based relationship between he and Masad Trading, LLC existed. Trial Tr. 105-06. MFI did not introduce any documentary evidence demonstrating that there existed such a relationship between Masad Trading, LLC and IGF, and Defense counsel did not cross-examine Masad on this issue.

## LEGAL STANDARD

"In order to state a breach of contract claim under Illinois law, a plaintiff must allege (1) the existence of a valid and enforceable contract, (2) performance by the plaintiff, (3) breach of the contract by the defendant, and (4) injury to the plaintiff as a result of the defendant's breach." *S. Indus. Leasing, LLC v. Ingersoll-Rand Co.*, No. 02 C 4528, 2003 WL 223436, *7 (N.D. Ill. Jan.31, 2003) (citing *Gonzalzles v. Am. Express Credit Corp.*, 733 N.E.2d 345 (Ill. App. Ct. 2000)). Illinois's Uniform Commercial Code governs contracts for the sale of goods. 810 ILCS 5/2-102.

To succeed on an account stated claim, a party must prove that the parties had an agreement under which one party was regularly billed for services provided by the other party; the party providing the services billed the other (or provided other statements of the amounts due on the account); and the party owing the money did not dispute the correctness of the bills but also did not pay. *Patrick Eng'g, Inc. v. City of Naperville*, 955 N.E.2d 1273, 1291 (Ill. App. Ct. 2011). But an account stated claim "only determines the amount of debt where liability already exists, it does not create a new liability on its own." *Medix Staffing Sols., Inc. v. Novo Health, LLC*, No. 22-CV-

225, 2024 WL 579995, at *5 (N.D. Ill. Feb. 13, 2024) (citing *Fabrica de Tejidos Imperial, S.A. v. Brandon Apparel Grp., Inc.*, 218 F. Supp. 2d 974, 979 (N.D. Ill. 2002))

## ANALYSIS AND CONCLUSIONS OF LAW

### I.   Amiran's Credibility

As an initial matter, the Court notes that it did not find Amiran to be a credible witness. While testifying, Amiran frequently contradicted himself, contradicted his deposition testimony, and offered implausible explanations for the disputed payments and shipments. In this case, where both parties' documentary evidence was wanting, the Court's assessment of Amiran's credibility weighs heavily in its analysis.

### II.  MFI and IGF Entered into Valid Contracts

As a matter of law, the Court finds that MFI and IGF entered into valid contracts for the purchase of food products in each of the 11 disputed invoices. The Court finds that IGF accepted the products in each shipment, arranged for its travel to IGF's facility, stored the product, and arranged for its sale to IGF's customers.

In Illinois law, a contract for the sale of goods for the price of $500 or more is generally not enforceable unless it is in writing. 810 ILCS 5/2-201(1). However, an exception exists when the buyer receives and accepts the goods. *Id.* at 5/2-201(3)(c). IGF stipulated that it received the shipped goods. Trial Tr. 118. Amiran testified that IGF then treated the goods as they would any other product that they imported. There is no credible evidence in the record that that anyone from IGF communicated to MFI that they did not want the goods, or that they did not sell the goods in accordance with their normal practice, or that they ever communicated that MFI

6

should stop sending them goods. In addition, an agent of IGF attested on United States Customs forms that IGF was the purchaser of the disputed shipments. Because IGF accepted and received the disputed goods from MFI, valid contracts between IGF and MFI existed. *See Hodgman, Inc. v. Feld*, 447 N.E.2d 450, 456 (Ill. App. Ct. 1983) (finding a contract existed for sale of goods for more than $500 where purchaser received and accepted goods).

### III. MFI is not entitled to recover the value of the disputed payments made in satisfaction of 9-Golden-2018.

The Court finds that the disputed wire payments made for Invoice 092018 were paid in satisfaction of Invoice 9-Golden-2018. At trial, MFI offered two arguments in opposition. First, MFI argued that, because the notation of the invoice wire payments in the wire payments ("092018") did not exactly match MFI's notation of the invoice ("9-Golden-2018"), the Court should find that those payments were not made in satisfaction of MFI's invoice. But there is no rule that a payment must bear the exact same designation as an invoice to satisfy any amount owed. And MFI did not offer any evidence of a contract or arrangement for which IGF might otherwise owe the disputed sums for transactions in or around September 2018, as the names of both the wire payment and invoice suggest. The mere fact that the disputed payments are designated 092018 rather than 9-Golden-2018 thus does not suggest that the payments were not made in satisfaction of 9-Golden-2018.

MFI also argued that, because the invoices were sent either to Hisham Masad individually or to Masad Trading, LLC, they cannot be credited against the amount

7

IGF owed to MFI. While it is true that the three entities—Hisham Masad, MFI, and Masad Trading—are all separate as a legal matter, Hisham Masad is the sole shareholder in the latter two. In Illinois, the measure of damages for breach of contract is the amount that will compensate the aggrieved party for the loss "which either fulfillment of the contract would have prevented or which the breach of it has entailed." *LeFevour v. Howorka*, 586 N.E.2d 656 (Ill. App. Ct. 1991). "The purpose of damages is to put the nonbreaching party into the position he or she would have been in had the contract been performed, but not in a better position." *Walker v. Ridgeview Construction Co.*, 746, 736 N.E.2d 1184 (Ill. App. Ct. 2000). Allowing MFI to recover the value of payments which were incorrectly sent to the sole owner of MFI or to another entity with the same sole owner as MFI would put MFI in a better position than it would be if the contract had been performed. Accordingly, the Court finds that MFI is not entitled to recover the disputed $38,800 payments made in satisfaction of 9-Golden-2018.

## IV. MFI is entitled to recover the value of the remaining disputed invoices.

The Court finds that IGF breached its contract with MFI with respect to the remaining disputed invoices and that MFI is entitled to recover the remaining amounts.

Other than the wire confirmations paid for 9-Golden-2018, IGF did not provide credible evidence that it paid any other amounts towards the disputed invoices. With respect to the copy of the check in GOLDEN00008, IGF could provide only a copy of

8

the front of the check. The check was also made out to Hisham Masad individually and it did not reference any of the disputed invoices. Given these issues, the Court declines to find that that this check was paid in satisfaction of any of the disputed invoices.

The Court further declines to find that any payments that IGF or Amiran made to Masad out of "sympathy" or for any other personal reason were paid in satisfaction of the disputed invoices.

The Court also declines to find that IGF was justified in paying partial amounts because of the quality or salability of any of the goods. IGF did not present credible evidence that the goods it received were not salable. Amiran testified that he had documents and receipts sufficient to establish this, but IGF did not offer them into evidence.

Accordingly, MFI is entitled to recover a total of $66,861 ($105,661 less the $38,800 paid in satisfaction of 9-Golden-18).

**V.     MFI's account stated claim is dismissed as moot.**

A party that recovers damages for breach of contract "may not also recover the same damages under the theory of account stated." *Fabrica*, 218 F. Supp. 2d at 979. Because MFI's account stated claim seeks to recover the same damages sought in its breach of contract claim, the account stated claim is dismissed as moot. *See id.* (dismissing as moot account stated claim after finding plaintiff was entitled to judgment on breach of contract claim).

## CONCLUSION

For the stated reasons, MFI is entitled to judgment on its breach of contract claim and to $66,861 in damages plus post-judgment interest pursuant to 28 U.S.C. § 1961(a). Count II is dismissed as moot. Civil case terminated.

E N T E R:

Dated: August 25, 2025

MARY M. ROWLAND
United States District Judge